# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **TRACI S. RANGE,** | ) | **CASE NO.  1:04 CV 32** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| **FORD MOTOR COMPANY, et al.,** | ) | |
| | ) | |
| **Defendant.** | ) | **MEMORANDUM OPINION** |

This matter is before the Court on Defendant's Motion for Summary Judgment (Document #41).  Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant, Ford Motor Company, has petitioned the Court for summary judgment on all of Plaintiff's claims.  For the reasons set forth below, Defendant's Motion for Summary Judgment is GRANTED as to all of Plaintiff's claims.

## FACTS

On February 28, 2003, Plaintiff, Traci S. Range, as Administratrix of the Estate of David K. Hinderman, ("Plaintiff"), filed a workplace intentional tort claim against Defendant in the Cuyahoga County Court of Common Pleas, Case No. 495326, alleging Mr. Hinderman

contracted and died from Legionnaire's Disease contracted while working at Ford's Cleveland Casting Plant in Brookpark, Ohio ("the Plant") in March 2001. Defendant removed the case to this Court on January 7, 2004.[1]

Mr. Hinderman was employed by Defendant at the Plant for more than thirty years. At the time he contracted Legionnaire's Disease, March 2001, Mr. Hinderman worked the midnight shift (first shift) on the Core Line at the Plant. Mr. Hinderman spent his entire shift shoveling and raking sand out of the core machines on the 4.6 Line in the Core Department, which is physically located in the Molding Department. Mr. Hinderman was one of four Plant employees to have confirmed cases of Legionnaire's disease in March 2001. Mr. Hinderman died of Legionnaire's disease on March 16, 2001 at the age of 53.

On Monday, March 12, 2001, Defendant was contacted by the local UAW who informed it that at least one of its employees had been diagnosed with Legionnaire's Disease. Defendant soon learned that multiple employees had possibly contracted Legionnaire's Disease and, as a result, voluntarily closed the Plant on the morning of Wednesday, March 14, 2001. Subsequently, Ford implemented sampling and testing of all potential water sources at the Plant. Eleni Vosicky, a safety engineer at the Plant, began researching Legionnaire's Disease and its transmission. Ms. Vosicky identified water sources at the Plant for testing. In addition, several governmental agencies became involved in the investigation of the circumstances of

---

[1] This Court has thoroughly reviewed all of the information available to it for purposes of deciding whether summary judgment is appropriate, including the briefs, affidavits and supporting materials submitted by the Parties, and gives deference to evidence presented by the non-moving party, in this case Plaintiff, in the event of any conflict. However, the facts of this case generally are not in dispute.

-2-

Legionnaire's Disease at the Plant, including the Cuyahoga County Board of Health, the Center for Disease Control, and the Ohio Department of Health. Some of the agencies, as well as employees of Defendant, conducted an epidemiologic investigation including environmental sampling; statistical analysis; and, a case control study. The CDC requested that no remediation occur until all sampling was complete. The testing identified the presence of *Legionella* bacteria in several areas.[2]

Since the Plant became operational in 1952, Defendant has never been cited by OSHA for exposing Plant employees to *Legionella* bacteria, neither prior to the time Mr. Hinderman contracted Legionnaire's Disease, nor as a result of the March 2001 incident. Prior to the March 2001 incident, there were no prior instances in which a Plant employee was diagnosed with Legionnaire's Disease as a result of exposure to any type of *Legionella* bacteria, nor has any employee ever invoked Defendant's "Right to Refuse Work Rule" over a concern relating to Defendant's water systems at the plant, *Legionella* bacteria, or Legionnaire's Disease. No evidence has been presented that Defendant failed to comply with any Federal or State safety standards with regard to *Legionella* bacteria or Legionnaire's Disease, as none existed. As of March 2001, neither the Federal nor State Government had enacted regulations regarding the sampling, treatment or prevention of *Legionella* bacteria. There are no Federal or State statutes

---

[2]

The opinion of Plaintiff's expert, James M. Barbaree, sets for the following description of Legionella bacteria and those at the greatest risk:

> Legionella, the bacterium that causes this problem, is ubiquitous in natural and domestic aquatic environments, is transmitted by breathing aerosols containing the bacterium, and usually poses more of a risk to those who have certain risk factors such as over the age of 55, having an underlying disease, on immunosuppressive therapy, and others.

-3-

or agency-required mandates governing the operation of systems with the potential to amplify *Legionella* bacteria, nor are there any Federal or State guidelines regarding what constitutes a safe or unsafe *Legionella* exposure level.

Experts testifying for both Plaintiff and Defendant agree that prior to March 2001, there had never been an incident of *Legionella* exposure at an automobile foundry, or any other type of foundry, in the United States.  Plaintiff's expert acknowledges that prior to March 2001, there were no government recommendations setting forth "an accepted testing and treatment program for a casting plant."  While Defendant does not dispute that a "number of industry, safety and health organizations have published facts, recommendations and guidelines relative to *Legionella*," Defendant notes that none of the recommendations or guidelines apply to the foundry setting.  Further, there are no recommendations or guidelines that recommend affirmative testing without a prior incident of exposure to *Legionella* bacteria.  In the absence of an outbreak of Legionnaire's Disease, the CDC does not recommend testing for *Legionella* bacteria.

On February 28, 2003, Plaintiff filed her intentional tort claim in the Cuyahoga County Court of Common Pleas against Defendant, alleging that Mr. Hinderman became ill and died "as a direct and proximate result of workplace exposure" to *Legionella* bacteria.  Defendant removed the case to this Court on January 7, 2004.  Plaintiff alleges that Defendant "had knowledge that it had established a workplace wherein dangerous and deadly bacteria was developed and was present, had knowledge that it had failed to maintain and sanitize its water systems and equipment in accordance with industry standards, federal safety recommendations and disease control guidelines and had knowledge that its employees, including Mr. Hinderman, were being

-4-

exposed to such bacteria in the course of performing their job duties and functions without protections from the injurious bacteria." Plaintiff claims that "a dangerous and deadly condition existed" at the Plant, which was known by Defendant. Further, Plaintiff claims that Defendant knew that Mr. Hinderman and other employees "within the Plant were being exposed to hazardous bacteria and that exposure to and ingestion of such bacteria is substantially certain to cause harm, including death." Plaintiff alleges Defendant's conduct was "willful and wanton and constitutes an intentional employment tort."

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial

-5-

does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred with the Ninth Circuit that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). FED. R. CIV. P. 56(e) also has certain, more specific requirements:

-6-

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify.  Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit.  Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225-26 (citations omitted).  However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id.* at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248.  The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249.  The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

-7-

## DISCUSSION

Plaintiff alleges a workplace intentional tort claim against Defendant relative to Mr.

Hinderman's illness and death from Legionnaire's Disease in March 2001. The parties agree that

the decision in *Fyffe v. Jeno's, Inc.*, 59 Ohio St. 3d 115, 570 N.E.2d 1108 (1991), delineates the

standard for an intentional tort claim raised against an employer. The *Fyffe* test requires a

Plaintiff to prove that his employer:

1. Had knowledge of the existence of a dangerous condition, process, procedure or instrumentality within its business operation;

2. Knew that if the employee were subjected by his employment to such dangerous condition, process, procedure, or instrumentality, then harm to the employee would be a substantial certainty; and

3. Under such circumstances and with such knowledge, did act to require the employee to perform the dangerous task.

*Fyffe*, 59 Ohio St. 3d 115, 570 N.E.2d 1108, Paragraph 1 of Syllabus.

"To establish an intentional tort of an employer, proof beyond that required to prove

negligence and beyond that to prove recklessness must be established." *Id.* at Syllabus. It must be

shown that "the employer knew that injuries to employees [were] certain or substantially certain

to result from the process, procedure or condition." *Id.* at Syllabus. In order to prove a claim of

intentional tort, a plaintiff must show actual knowledge on the part of the employer of "the exact

dangers which ultimately caused injury." *Podgurski v. GMC*, 65 Fed. Appx. 960, 963 (6th Cir.

2003) (citing *Sanek v. Duracote Corp.*, 43 Ohio St. 3d 169, 539 N.E.2d 1114, 1117 (Ohio 1989)).

"In other words, the plaintiff must show more than negligence or recklessness, and the plaintiff

must show more than a high risk of injury." *Klepsky v. Dick Enterprises, Inc.*, 55 Fed. Appx. 270,

273-74 (6th Cir. 2003) (citing *Jandro v. Ohio Edison Co.*, 167 F.3d 309, 313 (6th Cir. 1999)).

-8-

"The plaintiff must show that the employer '( 1) specifically desired to injure the employee; or (2) knew that injury to an employee was certain or substantially certain to result from the employer's act and, despite this knowledge, still proceeded.'" *Id.* (quoting *Mitchell v. Lawson Milk Co.,* 40 Ohio St. 3d 190, 532 N.E.2d 753, 756 (Ohio 1988)).

The Court in *Fyffe* explained the types of conduct on the part of the employer that do and do not rise to the level of an intentional employment tort:

> Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk -- something short of substantial certainty -- is not intent.

*Fyffe,* 59 Ohio St. 3d 115, 570 N.E.2d 1108, Syllabus at Paragraph 2.

The facts of this case do not rise to the level of an intentional employment tort as contemplated by the Court in *Fyffe* and subsequent cases interpreting *Fyffe.* Plaintiff has presented no evidence to this Court that Defendant was certain or substantially certain that Mr. Hinderman would contract Legionnaire's Disease at the Plant, nor has evidence been presented that Defendant even knew of the existence of *Legionella* bacteria at the Plant. As stated above, experts for both Plaintiff and Defendant acknowledge that prior to March 2001, there had never been an incident of *Legionella* exposure at an automobile foundry, or any other type of foundry, in the United States. Further, Plaintiff's expert acknowledges that there were no government regulations setting forth "an accepted testing and treatment program for a casting plant" prior to the March 2001 incident at the Plant. Further, there are no recommendations or guidelines that

-9-

recommend affirmative testing without a prior incident of exposure to *Legionella* bacteria. As stated above, in the absence of an outbreak of Legionnaire's Disease, the CDC does not recommend testing for *Legionella* bacteria.

While there are no Federal or State mandates relative to *Legionella* bacteria that Defendant was required to and/or failed to follow at the Plant, Plaintiff relies primarily upon the fact that Defendant possessed general information regarding "waterborne bacterial hazards" and recommended control measures, and that an employee of Defendant had once attended a seminar that included discussion regarding *Legionella* bacteria, in support of her claim of an intentional employment tort. However, even if this fact could be construed as negligence, or even recklessness on the part of Defendant, which this Court need not decide in this case, this conduct still would not rise to the level of certainty or substantial certainty required to prove an intentional employment tort. As stated above, "the mere knowledge and appreciation of a risk -- something short of substantial certainty -- is not intent." *Fyffe*, 59 Ohio St. 3d 115, 570 N.E.2d 1108, Syllabus at Paragraph 2. Plaintiff has presented no evidence that Defendant had actual knowledge of the existence *Legionella* bacteria at the Plant and that it proceeded regardless of that knowledge.

Plaintiff relies upon two cases in support of his argument that this Court should find actual knowledge on the part of Defendant, arguing that the actions of Defendant amount to "willful blindness." First, Plaintiff refers to *Padney v. MetroHealth Medical Center*, 145 Ohio App. 3d 759, 764 N.E.2d 492 (8th Dist. 2001). Mr. Padney worked as an assistant performing autopsies at MetroHealth Medical Center. He died after becoming infected with tuberculosis while assisting with an autopsy of a cadaver infected with the disease. His wife and daughter

-10-

argued on behalf of the estate that "MetroHealth failed to employ adequate controls to prevent the transmission of tuberculosis to its employees, knowing that the conditions created by these failures constituted a dangerous instrumentality within its business and that it was substantially certain that an employee subjected to these conditions would be harmed." 145 Ohio App. 3d at 763, 764 N.E.2d at 496. The room within which the autopsy was performed did not comply with CDC guidelines for the prevention of the transmission of tuberculosis in health care settings and Metrohealth knew of the presence of the tuberculosis virus. Therefore, the Court held that the trial court erred in granting a directed verdict in favor of the defendant.

Second, Plaintiff relies upon *Perrine v. MPW Indus. Servs.*, 213 F. Supp. 2d 835 (S.D. Ohio 2002). Defendant MPW was a business providing industrial cleaning, water purification and waste handling systems to its customers. Working conditions exposed employees to fumes and chemicals known to be dangerous. Perrine claimed that MPW required him to work, and continued to require him to work, in openly dangerous conditions, with knowledge of the dangers, and failed to provide him with adequate training and protective equipment for employees working around chemicals known to be dangerous. The Court found that factual questions existed necessitating a jury trial.

Although this Court does not believe Plaintiff has presented evidence to support a claim of intentional employment tort against Defendant, both *Padney* and *Perrine* are instructive. In *Padney*, there were established, CDC guidelines for the prevention of the transmission of tuberculosis in health care settings and MetroHealth knew of the presence of tuberculosis prior to Mr. Padney contracting the disease. In *Perrine*, both the employer and employees knew of the presence of hazardous conditions. In the case before this Court, unlike in *Padney*, there is no

-11-

evidence that Defendant had any knowledge that *Legionella* bacteria was present at the Plant and there were no government regulations Defendant failed to follow which resulted in Mr. Hinderman's illness. Likewise, unlike the situation in *Perrine*, Defendant had no knowledge of the presence of *Legionella* bacteria. Therefore, *Padney* and *Perrine* can be distinguished from the facts and circumstances of this case.

This Court agrees with Defendant that contrary to Defendant's general recognition of the dangers of water-borne bacteria, Defendant did not know of the existence of *Legionella* bacteria at the Plant and did not know with substantial certainty that Mr. Hinderman or any other employee at the Plant would be injured by *Legionella* bacteria. There were no prior incidents of Legionnaire's Disease at the Plant, and there had been no prior outbreaks of Legionnaire's Disease involving foundries in the United States. There is no evidence Defendant failed to comply with any government regulations regarding the control of *Legionella* bacteria, as none existed; nor was it required or recommended that Defendant test for *Legionella* bacteria prior to an incident of exposure to *Legionella* bacteria. Simply put, there is no evidence of "actual knowledge" on the part of Defendant necessary to support Plaintiff's intentional employment tort claim and there is no evidence of "willful blindness" as suggested by Plaintiff. Accordingly, Plaintiff's claims cannot withstand summary judgment.[3]

---

[3]

Because Plaintiff has failed to set forth sufficient evidence to sustain her claim of an intentional employment tort under *Fyffe*, this Court will not discuss the issue of proximate cause.

-12-

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Document #41)

is GRANTED.

IT IS SO ORDERED.

*Donald C. Nugent*

DONALD C. NUGENT
United States District Judge


DATED: *August 15, 2005*

-13-